# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| BRIAN PETERS, <br>   Plaintiff, <br>  v. <br> RFI ENTERPRISES, INC., <br>   Defendant. | Case No. 18-cv-01187-BLF <br><br> **ORDER GRANTING MOTION TO REMAND** |

Before the Court is Plaintiff Brian Peters' ("Peters") motion to remand on the ground that there is no federal question jurisdiction. Mot., ECF 10. For the reasons stated below, the Court GRANTS Peters' motion.

## I. BACKGROUND

On January 12, 2018, Peters, a former employee of Defendant RFI Enterprises, Inc. ("RFI") filed a Class Action Complaint in Superior Court of the State of California, Santa Clara County. Compl., ECF 1-1. In his complaint, he alleges that RFI violated several California laws by (a) failing to correctly calculate the regular rate of pay for employees, leading to incorrect overtime payments; (b) failing to provide proper payroll records; and (c) engaging in unfair business practices. *Id.* ¶ 20. The following facts are taken from Peters' complaint.

Peters was a non-exempt employee at RFI's location in San Jose, California. *Id.* ¶ 8. Throughout Peters' employment, RFI failed to pay him and certain other non-exempt employees overtime wages at the correct rate of pay by failing to include certain non-discretionary wages in the calculation of the regular rate of pay, which is used in turn to calculate overtime wages. *Id.* ¶¶ 20, 23, 33. Moreover, because of this miscalculation, employees' itemized wage statements were inaccurate. *Id.* ¶ 36. These violations, he claims, also constituted unfair and unlawful business

practices. *Id.* ¶¶ 40–41.

Peters filed a state court complaint asserting three causes of action for violations of the following laws: (1) Labor Code §§ 510, 558, and 1194, for failure to correctly calculate the regular rate of pay, and in turn, overtime wages; (2) Labor Code § 226(a), for failure to provide proper payroll records; and (3) California Business and Professions Code § 17200, *et seq.*, for unlawful and unfair business practices. *Id.* ¶ 31–43.

On February 20, 2018, RFI filed its answer, in which it asserts a general denial and seven affirmative defenses, two of which are relevant here. Ans., ECF 1-5 at 2–3. In its third affirmative defense, Ans. at 2, RFI alleges that Peters' claims are preempted by Section 301 of the Federal Labor Management Relations Act ("LMRA"), 28 U.S.C. § 185. The LMRA provides for federal question jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization" that represents certain eligible employees. *Id.* In its Notice of Removal ("Not."), ECF 1 ¶ 6, RFI alleges that, during the relevant time period, Peters and RFI's other non-exempt employees were subject to a valid collective bargaining agreement ("CBA").[1] *See* Collective Bargaining Agreement ("CBA"), ECF 1-3. Peters does not mention this CBA in his complaint. In its second affirmative defense, RFI alleges that the CBA exempted Peters under Labor Code § 514 from California's overtime requirements. Ans. at 2.

On February 23, 2018, RFI removed the case to this Court based on federal question jurisdiction, claiming that "Plaintiff's claims under California law are preempted under Section 301 of the [LMRA]." Not. ¶ 3. Peters now moves to remand, arguing that there is no federal question jurisdiction. Having carefully considered the submitted papers, the Court GRANTS Peters' motion and remands this action to state court for the reasons discussed below.

## II. LEGAL STANDARD

Removal is proper where the federal courts have original jurisdiction over an action

---

[1] RFI claims that two CBAs were in effect during the relevant time period: one governing from December 1, 2012 to November 30, 2016, and the other governing from December 1, 2016 to the present. *See* Not. ¶ 6. Because the terms of those CBAs relevant to this Motion are the same, *see* CBA, 1-3, the Court refers to the two CBAs as a single CBA throughout this decision.
Moreover, for the purposes of resolving this Motion only, the Court assumes that the CBAs are valid and applied to Peters.

2

brought in state court. 28 U.S.C. § 1441(a). Courts strictly construe the removal statute against removal jurisdiction. *E.g.*, *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009); *Luther v. Countrywide Home Loans Servicing, LP*, 533 F.3d 1031, 1034 (9th Cir. 2008). "A defendant seeking removal has the burden to establish that removal is proper and any doubt is resolved against removability." *Luther*, 533 F.3d at 1034 (citation omitted); *see also Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) ("[A]ny doubt about the right of removal requires resolution in favor of remand.").

Under 28 U.S.C. § 1331, federal courts have original jurisdiction over civil actions "arising under the Constitution, laws, or treatises of the United States." Federal question jurisdiction "is determined, and must exist, as of the time the complaint is filed and removal is effected." *Strotek Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002). Removal pursuant to Section 1331 is governed by the "well-pleaded complaint rule," which provides that federal question jurisdiction "exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

There exists, however, an "independent corollary" to the well-pleaded complaint rule, known as the doctrine of complete preemption. *Id.* at 393 (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 22 (1983)). Through complete preemption, certain "extraordinary" federal statutes "convert[] an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987). LMRA § 301 is a federal statute with complete preemptive force. *See Caterpillar*, 482 U.S. at 393.

### III. DISCUSSION

The issue before this Court is whether LMRA § 301 preempts Peters' state-law claims such that original federal question jurisdiction exists to support the removal of this case from state court.

As an initial matter, Peters and RFI agree that Peters' second cause of action for improper payroll records under Labor Code § 226(a) and third cause of action for unfair business practices under California Business and Professions Code § 17200, *et seq.*, are derivative of his cause of

3

action for failure to properly calculate overtime wages under Sections 510, 558, and 1194.[2] *See* Mot., ECF 10, at 7; Opp., ECF 11, at 11. Thus, this Court need not conduct a separate preemption analysis of the two non-overtime claims. *See Vasserman v. Henry Mayo Newhall Mem'l Hosp.*, 65 F. Supp. 3d 932, 964 (C.D. Cal. 2014). And as to the overtime claim, though it is premised on Sections 510, 558, and 1194, RFI relies only on Section 510's exemption, codified at Section 514, as a basis for LMRA § 301 preemption, and in turn federal question jurisdiction. *See* Opp. at 11–15. As such, this Court need only decide whether LMRA § 301 preempts Peters' claims under Section 510.

LMRA § 301 completely preempts only claims "founded directly on rights created by collective-bargaining agreements" or "'substantially dependent on analysis of a collective-bargaining agreement.'" *Caterpillar*, 482 U.S. at 395 (quoting *Elec. Workers v. Hechler*, 481 U.S. 851, 859 n.3 (1987)). It is not enough that the "state law cause of action is conditioned on some term or condition of employment that was collectively bargained." *Alaska Airlines Inc. v. Schurke*, No. 13–35574, 2018 WL 3636431, at *4 (9th Cir. Aug. 1, 2018) (en banc). Section 301 preemption exists "only where a state law claim arises entirely from or requires construction of" a collective bargaining agreement ("CBA"). *Id.* at *1.

The Ninth Circuit has developed a two-step inquiry to determine whether a state law claim satisfies either of these preemption requirements. *See Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059–60 (9th Cir. 2007). Under this *Burnside* test, the court first evaluates the "'legal character'" of the claim by asking "whether [the claim] seeks purely to vindicate a right or duty created by the CBA itself." *Alaska Airlines*, 2018 WL 3636431, at *7 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994)). If it does, the claim is preempted. If not, the court then asks "whether litigating the state law claim nonetheless requires interpretation of a CBA." *Id.* at *8.

Section 510 sets requirements, in part, for properly calculating overtime compensation for certain non-exempt employees. These calculations take into account the "regular rate of pay" of

---

[2] Statutory references throughout this opinion refer to the California Labor Code unless otherwise noted.

4

an employee. Section 514 exempts employees from Section 510's requirements if certain conditions are met:

> Sections 510 and 511 do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.

RFI argues that the CBA triggers Section 514's exemption. Because the exemption applies, it argues, Peters' overtime rights depend on the CBA, and thus it satisfies both steps of the *Burnside* test. Opp. at 10–12. The Court discusses both steps in turn.

### A. Legal Character of the Claim

In the first step of the *Burnside* test, the court "evaluates the 'legal character' of the claim by asking whether it seeks purely to vindicate a right or duty created by the CBA itself." *Alaska Airlines*, 2018 WL 3636431, at *7 (quoting *Livadas*, 512 U.S. at 123).

According to Peters, RFI fails to satisfy this step because Peters' state law claims seek to vindicate rights conferred by state law, independent of the CBA. He argues that his overtime claims are "based on substantive non-waivable rights under state law." Mot. at 8. He further argues that RFI's reliance on the exemption to Section 510 constitutes an affirmative defense that cannot establish LMRA § 301 preemption under governing Ninth Circuit precedent. *See id.* (citing *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001); *Gregory v. SCIE, LLC*, 317 F.3d 1050, 1052–53 (9th Cir. 2003)); *id.* at 10. And he cites several district court cases that have specifically held that invocation of Section 514 and similar exemptions as affirmative defenses cannot serve as the sole basis for preemption and removal. *See* Mot. at 9; Reply, ECF 12, at 4.

In opposing Peters' arguments, RFI argues that Peters' right to overtime is independent of state law because the CBA triggers Section 514's exemption, and thus "the terms of the [CBA] (and not state law) control[] any right to overtime." Opp. at 13 (citing *Raphael v. Tesoro Refining and Mktg. Co.*, No. 15–CV–02862–ODW, 2015 WL 3970293, at *5). Because the CBA controls, it concludes, Peters' overtime rights "'arise out of a [CBA]' *only*," not out of state law. *Id.*

(quoting *Coria*, 63 F. Supp. 3d at 1098–1100).

The Ninth Circuit in *Alaska Airlines* recently provided clear guidance on this step of the *Burnside* test. The Ninth Circuit explained that the claimed right or duty must be "created by the CBA itself"—that is, the CBA must be the "'only source' of the right the plaintiff seeks to vindicate." 2018 WL 3636431, at *7 (quoting *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 258 (1994)). To qualify then, the entirety of the claim must rely on interpretation of the CBA. *See id.* Where, by contrast, the claims "are not simply CBA disputes by another name"—if they simply "refer to a CBA-defined right, rely in part on a CBA's terms of employment, run parallel to a CBA violation, or invite use of the CBA as a defense"—the claims are not preempted. *Id.* at *8 (citations omitted). The "primary point of reference" in this preemption analysis is "the plaintiff's pleading." *Id.* at *9.

The Ninth Circuit's most recent guidance confirms, as the majority of courts to decide the issue have held, that invocation of an exemption like the one codified in Section 514 is not sufficient to find that LMRA § 301 preempts a claim grounded in state law. For this reason, the Court holds that RFI fails to satisfy the first step of the *Burnside* test.

Section 510 confers specific rights for overtime pay to certain employees. Here, Peters' complaint (the "primary point of reference" for the preemption analysis) claims only a violation of state law, with no reference to the CBA. This omission makes sense, because these rights exist even in the absence of any CBA; by definition, they are not "created by the CBA itself." *Alaska Airlines*, 2018 WL 3636431, at *7. That an exemption to Section 510 exists for employees covered by a qualifying CBA does not change the fact that these rights are conferred by state law in the first instance—the legal character of the claim "seek[s] purely to vindicate a right or duty" created by *state law*, not the CBA. *Id.* Likewise, the invocation of this exemption as an affirmative defense does not change the character of the claim.[3] *See id.* at *8 (noting that the

---

[3] RFI claims that reading its invocation of Section 514 as a mere defense is "simplistic" and "misses a critical point," namely that the preemption analysis is distinguishable from invocation of a "mere defense." Opp. at 9–10. But Peters' argument is appropriately grounded in the preemption analysis. He does not argue that the invocation of an affirmative defense alone defeats RFI's removal; he argues instead that his overtime right is a state-law right and that invocation of an affirmative defense cannot *transform* this state-law right into a right created by a CBA. In

6

claim must do more than "invite use of the CBA as a defense"); *see also Caterpillar*, 482 U.S. at 398 ("[T]he presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule . . . ."). In practical terms, if the affirmative defense is successful and the exemption applies, Peters simply loses his state law claim. If it does not apply, the CBA is irrelevant.

Myriad other courts in this Circuit have come to the same conclusion. For example, in *Vasserman*, the court held that LMRA § 301 did not preempt the plaintiff Vasserman's state law claims where the defendant invoked Section 514 as a defense. 65 F. Supp. 3d at 954–55. The court first held that "the fact that the § 514 exemption may apply [did] not alter the substance of Vasserman's [Section 510] claim," which was rooted entirely in state law. *Id.* at 954. The court then held that the defendant's reliance on Section 514 as a defense did not change the analysis. *Id.* at 954–55 (citing *Placencia v. Amcor Packaging Distrib., Inc.*, No. SACV 14–0379 AG, 2014 WL 2445957, at *2–*3 (C.D. Cal. May 12, 2014)). Even if the defendant's Section 514 defense were to ultimately prevail, "Vassserman's claim [was] premised on state law rights afforded by § 510, not on rights created by the CBA." *Id.* at 955. The defendant thus failed to prove that Vasserman's claim was preempted under the first *Burnside* step. *See also Gregory*, 317 F.3d at 1052–54.

At least one court in this district has reached that same conclusion as to a substantively identical argument based on a plaintiff's claim under Section 512(a) regarding meal periods and a defendant's defensive invocation of the exemption codified at Section 512(e). *See Lopez v. Sysco Corp.*, No. 15–CV–04420–JSW, 2016 WL 3078840, at *3–*4 (N.D. Cal. Jan. 25, 2016) (citing *Vasserman*, 65 F. Supp. 3d at 954–55; *Placencia*, 2014 WL 2445957, at *2). And other courts have reached the same conclusion as to both Section 510 claims and other similar state-law claims. *See, e.g.*, *Meza v. Pac. Bell Tel. Co.*, No. 17–CV–00665–LJO, 2017 WL 3503408, at *5–*6 & n.2 (E.D. Cal. Aug. 16, 2017) (Section 510); *Cuellar-Ramirez v. US Foods, Inc.*, No. 16–CV–00085–

---

essence, he argues that an affirmative defense cannot save RFI under the first prong of the *Burnside* test, which is precisely right.

RS, 2016 WL 1238603, at *4–*6 (N.D. Cal. Mar. 22, 2016) (Section 512(a) and Section 510); *Placencia*, 2014 WL 2445957, at *2–*3 (Section 510). To the extent the district court's ruling in *Coria*, 63 F. Supp. 3d at 1098–1100, is contrary to this wealth of case law, this Court respectfully finds these contrary cases more persuasive. *See, e.g.*, *Young v. Securitas Sec. Servs. USA, Inc.*, No. 17–CV–05342–JCS, 2018 WL 1142190, at *7 (N.D. Cal. Mar. 2, 2018) (finding *Vasserman* more persuasive); *Lopez*, 2016 WL 3078840, at *4 (same).

In sum, this Court agrees with the overwhelming majority of courts to decide the issue and finds that RFI's invocation of the Section 514 exemption as an affirmative defense does not change the legal character of Peters' state-law claim. The Court thus holds that RFI fails to satisfy the first *Burnside* step.

**B.     Whether the Claim Requires Interpretation of the CBA**

Even where a CBA does not create the right at issue, LMRA § 301 may still preempt the state-law claim when "litigating the state law claim . . . requires interpretation of a CBA," *Alaska Airlines*, 2018 WL 3636431, at *8—that is, when the claim is "substantially dependent" upon an analysis of the CBA, *Burnside*, 491 F.3d at 1060. The term "interpretation" in this context is "construed narrowly, . . . . '[I]t means something more than consider, refer to, or apply.'" *Alaska Airlines*, 2018 WL 3636431, at *8 (quoting *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000) (internal quotation marks omitted)). For the claim to be preempted, there must be an "active dispute" over the meaning of the CBA's terms. *Id.* Given this narrow construction, "the result of preemption at the second step is generally *not* the extinguishment of the state law claim." *Id.*

At this stage, the Court need not ask whether a court must interpret the CBA to resolve the *merits* of the ultimate dispute (*i.e.,* whether RFI failed to provide Peters with the correct overtime payments). Instead, it must decide only whether a court must interpret the CBA in order to determine whether the Section 514 exemption applies. *See Vasserman*, 65 F. Supp. 3d at 956 (holding that no interpretation was required to determine the applicability of the exemption); *Lopez*, 2016 WL 3078840, at *4 (same). If a court must interpret the CBA to determine if the exemption applies, the claim would be substantially dependent on the CBA—its viability would

turn on how the CBA is interpreted. If, by contrast, a court can determine whether the exemption applies by merely referencing the CBA, the claim is not substantially dependent on any interpretation of the CBA, and the claim is not preempted.

According to Peters, RFI fails to satisfy the second prong of the *Burnside* test because a court need not interpret the CBA to determine whether it satisfies Section 514's requirements—specifically, whether the CBA provides for "premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Peters claims that the overtime calculations set forth in the CBA are "unambiguous" and readily comparable to the regular rate provided by California law. Mot. at 13. He admits that the term "regular rate" is not defined in the CBA, but argues that an employee's hourly rate inarguably constitutes his or her regular rate. Reply at 5. Peters analogizes this case to *Controulis v. Anheuser-Busch*, No. CV 13–07378 RGK, 2013 WL 6482970, at *2 (C.D. Cal. Nov. 20, 2013), where the court determined the claim was not substantially dependent on the CBA because the CBA "explicitly provide[d]" for how to calculate the overtime rate, including by providing a definition of the regular hourly rate. *See* Mot. at 12. Peters argues that the CBA in this case is equally clear, such that the issue here is "not *how* the overtime rate is calculated, . . . but whether that calculation"—(here, the failure to include certain non-discretionary wages)—"violates California law." *Controulis*, 2013 WL 6482970, at *2; *see* Mot. at 12.

RFI, by contrast, argues that resolving Peters' overtime claim "will require a complex analysis of numerous provisions and terms" and require interpretation of several key, undefined terms, including the terms "regular hourly rate," "shift' hourly rate," "pyramiding," and "straight time rate." Opp. at 14–15 (quoting CBA §§ 4.2 (A), (D), (E); 4.3(A); and Addendum A). According to RFI, "[e]ach of these terms . . . directly impacts the overtime that may be due." *Id.* at 15. RFI analogizes this case to *Firestone v. Southern California Gas Co.*, 219 F.3d 1063 (9th Cir. 2000) and *Raphael*, 2015 WL 3970293. *See* Opp. at 14. In *Firestone*, which predates *Burnside* and thus did not follow the now-standard two-part inquiry, the Ninth Circuit held that the CBA required interpretation, and thus that the claim was preempted, because the parties

9

"disagree[d] on the meaning of terms" in the CBA, specifically, on how to calculate the applicable regular rate. 219 F.3d at 1066. In *Raphael*, the court held that the claim substantially depended on the multiple governing CBAs, and thus was preempted, because there was a "dispute regarding the terms of the CBA[s]" and a "plethora of provisions in need of interpretation." 2015 WL 3970293, at *6–*7. Like those cases, RFI argues, the claim here substantially depends on interpretation of the CBA.

This Court finds that Peters' claim is not substantially dependent on the CBA, because a court need not interpret the CBA to determine whether the exemption applies. The CBA clearly dictates how to calculate overtime payments. *See* CBA §§ 4.2, 4.3. Though RFI argues that the term "regular rate" is undefined, RFI's counsel has elsewhere made clear that "it is beyond dispute that when an employee is paid an hourly rate, the hourly rate constitutes their regular rate." *See* Reply at 5 (quoting Supp. Decl. of Kristen M. Agnew, ECF 12-1). From there, the provisions of the CBA are straightforward: Addendum A sets the applicable hourly rates (termed "straight time rate") for employees by classification (as dictated by CBA § 4.7). In § 4.2(D), the CBA provides that "all overtime work . . . shall be paid at one and one-half (1-1/2) times the 'shift' hourly rate," which is plainly defined in CBA §§ 4.2(A) and (B). Finally, § 4.3 sets forth the proper calculations for overtime rates outside of regular working hours and on holidays and weekends. All a court need do is refer to the CBA to determine whether it exempts Peters under Section 514. Mere reference to the CBA is not enough to find the claim substantially dependent on the CBA. *See Alaska Airlines*, 2018 WL 3636431, at *8.

This case is thus more similar to *Controulis* than to *Firestone* or *Raphael*. The courts in *Firestone* and *Raphael* each held that a court would need to interpret the CBAs because there were active disputes over the CBAs' terms and how to interpret them. *See Firestone*, 219 F.3d at 1066; *Raphael*, 2015 WL 3970293, at *6–*7. By contrast, the court in *Controulis* held that no interpretation was necessary because the CBA clearly laid out specific calculations for the employees' regular rates of pay, such that the method for calculating overtime pay was "undisputed." 2013 WL 6482970, at *2. Here, the regular rate of pay is indisputably the hourly rate, which is clearly set forth in Addendum A. The overtime calculations reliant on that rate are

10

straightforward.  As such, a court need not interpret the CBA to determine the amount of overtime pay, and in turn whether the Section 514 exemption is met.  *See Gregory*, 317 F.3d at 1052–53.  Because the claim is not substantially dependent on the CBA, LMRA § 301 does not preempt Peters' claim under this step of the *Burnside* test either.

RFI thus fails to demonstrate that LMRA § 301 preempts Peters' state-law claim under Section 510, such that this claim cannot serve as the basis for federal question jurisdiction.

## IV. ORDER

For the foregoing reasons, the Court finds that RFI has not met its burden to establish that removal is proper and GRANTS the motion to remand.  IT IS HEREBY ORDERED that:

1. The motion to remand is GRANTED.

2. The Clerk shall REMAND this case to Santa Clara County Superior Court.  All other matters are TERMINATED and VACATED, and the Clerk shall close this file.

**IT IS SO ORDERED.**

Dated: August 15, 2018

_____
BETH LABSON FREEMAN
United States District Judge

11